UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
GARDNER'S PHARMACY, INC.

Plaintiff,

   -against-                          **No.** _____

THE HARTFORD FINANCIAL SERVICES GROUP,
INC. a/k/a THE HARTFORD INSURANCE GROUP      **<u>NOTICE OF REMOVAL</u>**

Defendant.

-----------------------------------------------------------------X

TO THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

      1.     The Hartford Financial Services Group, Inc., ("Hartford") incorrectly sued herein as The Hartford Financial Services Group, Inc. a/k/a The Hartford Insurance Group, is a defendant in the civil action commenced by Plaintiff Gardner's Pharmacy, Inc. in the Supreme Court of the State of New York, County of Nassau, Index No. 604999/2017.  Pursuant to 28 U.S.C. §§ 1441 and 1446, Hartford hereby removes this action to the United States District Court for the Eastern District of New York, which is the judicial district in which this action is pending.

      2.     Removal is proper because this Court would have had original jurisdiction of this action based on diversity of citizenship, 28 U.S.C. § 1332, had this action been brought originally in federal court.  Furthermore, removal of the action is not barred under 28 U.S.C. § 1441(b), because no party properly joined as a defendant is a citizen of the State of New York, where this action is pending.

      3.     Original jurisdiction based on diversity of citizenship is proper in this case because:

      a.     Plaintiff alleges that it is a New York corporation with its principal place of business in Kings County, New York.

      b.     Defendant Hartford is, and has been since this action was commenced, a citizen of Delaware and Connecticut, in that it is incorporated in Delaware, and has its principal place of business in Connecticut.

      c.     The amount in controversy exceeds $75,000 exclusive of interest and costs, in that Plaintiff alleges that it is entitled to "[u]p to $1[,000,000] for loss of Business Income, Extra Expense, Civil Authority, and Extended Business Income losses[,]" under the insurance policy issued to Plaintiff.

4.     This Notice of Removal is timely pursuant to Rule 6 of the Federal Rules of Civil Procedure because the summons and complaint were served on Hartford on June 2, 2017.  This Notice of Removal was filed within 30 days of receipt of that pleading and within one year of the date on which the action was commenced.

5.     To date, the following process and pleadings have been filed in state court: the Summons and Complaint, and the affidavits of service.  The Summons and Complaint is annexed hereto as Exhibit 1; and the affidavits of service are annexed hereto as Exhibit 2.

Dated: New York, New York
      July 5, 2017

MOUND COTTON WOLLAN &
GREENGRASS LLP

By:     _____
     Lloyd A. Gura
     Sanjit Shah
     *Attorneys for Defendant*
     *Hartford Financial Services*
      *Group, Inc.*
     One New York Plaza

New York, New York 10004
Phone: (212) 804-4200
Fax:     (212) 344-8066
lgura@moundcotton.com
sshah@moundcotton.com

# EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

Gardner's Pharmacy, Inc.

Date Purchased:
INDEX NO.

Plaintiff,

**S U M M O N S**

Plaintiff's Address:
371 Broadway
Brooklyn, NY 11211

-against -

The Hartford Financial Services Group, Inc. a/k/a
The Hartford Insurance Group

Defendants

TO THE ABOVE NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer on the Plaintiff's Attorney(s) within 20 days after the serve of this summons, exclusive of the day of service for within 30 days after service is complete if this summons is not personally delivered to you within the State of New York; and in the case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

DATED: New York, New York
        May 30, 2017

/s/ John Manfredi
John Manfredi, Esq.
Manfredi Law Group, PLLC
ATTORNEY FOR PLAINTIFF
302 East 19th St. Suite 2A
New York, New York 10003
ph: (347) 614 7006

SUPREME COURT OF THE STATE OF NEW YORK      INDEX NO.
COUNTY OF NASSAU
Gardner's Pharmacy, Inc.

                                        Plaintiff,

                                                        COMPLAINT

          -against-


The Hartford Financial Services Group, Inc. a/k/a
The Hartford Insurance Group

                                        Defendants

Plaintiff Gardner's Pharmacy, Inc., as and for its complaint against defendant The Hartford

Financial Services Group, Inc. a/k/a The Hartford Insurance Group, alleges, upon information and

belief, as follows:


## THE PARTIES

1. Plaintiff Gardner's Pharmacy, Inc. is a New York corporation formed in 1990. Gardner's

   Pharmacy, Inc. (hereinafter "Gardner's) has principal offices and operates as a retail store at

   371 Broadway, Brooklyn, NY 11211. Gardner's primary business is selling retail prescription

   drugs.

2. The Hartford Financial Services Group, Inc. a/k/a The Hartford Insurance Group (hereinafter

   "Hartford") is a commercial insurance carrier with headquarters at One Hartford Plaza, Hartford,

   CT 06155 and regional offices at 277 Park Avenue, New York, NY 10172.


## PRELIMINARY STATEMENT

3. This breach of contract and declaratory relief action arises out of Hartford's refusal to provide coverage under an insurance policy.

4. Gardner's is the named insured under Hartford's policy number 12 SBA UL3824 (hereinafter "the Policy") which specifically provides coverage for, among other things, "computer fraud", "identity theft" and "forgery".

5. Gardner's is a victim of forgery, identity theft, and computer fraud by Jorge Vergara, Said Abdelkader, and Broadway RX.

6. Hartford paid $25,000.00 to Gardner's for losses caused by employee theft due under the Policy.

7. Hartford refuses to pay the additional claims submitted for, inter alia, stolen computer data, forgery, and identity theft ("the Claims") due under the Policy.

8. Gardner's submitted the Claims to Hartford.

9. The Policy is designed to protect against fraud and theft of computer data.

10. Despite the fact that Gardner's has paid its premiums, Hartford refuses to pay Gardner's Claims.

11. Gardner's seeks a declaration that there is coverage for Gardner's Claims under the Policy and damages for breach of contract due to Hartford's unreasonable failure to honor its obligation under the Policy to cover the Claims.

## JURISDICTION

12. This court has jurisdiction over this action pursuant to CPLR §§ 301 and 302. A proceeding directed related to this action was filed in this Court is pending before Justice John Galasso bearing index number 609576/2016.

## FACTUAL ALLEGATION

Page 8 of 40 PageID #: 8

Gardner's is a Victim or Theft

13. While Vergara was working for Gardner's, he looted over $1,000,000.00 dollars from Gardner's by opening sham bank accounts at Flushing Bank and TD Bank. The phony bank accounts were opened by forgery and identity theft. This massive criminal scheme bankrolled Broadway RX.

14. Gardner's lawsuit against Jorge Vergara, Said Abdelkader, and Broadway RX, et al is active in this Court under index number 609576/2016 and pending decision before Justice John Galasso in Nassau County Supreme Court.

15. Hartford reviewed the pleadings and evidence in Gardner's case filed under index number 609576/2016.

16. In addition to conversion by way of sham bank account looting, the lawsuit filed against Said Abelkader, Jorge Vergara, and Broadway RX also alleges that Broadway RX fraudulently linked itself with Gardner's to steal prescriptions. The linking scheme allows Broadway RX to connect with Gardner's as a chain pharmacy to re-fill existing prescriptions so Gardner's prescription income is paid to Broadway RX.

17. That is not disputed by Broadway RX and Vergara.

18. This linking scheme occurred for approximately twenty months.

19. The prescriptions and customer information is data that belongs to Gardner's.

20. The data theft has not occurred for new customers, or customer data that was entered post Vergara employment. Hartford is aware of that.

21. Given that fact, logic dictates that if Vergara worked at Gardner's for so long and was the face of the business, Gardner's data was copied and / or exported to Broadway RX. So Broadway RX would have the customer addresses, their prescription information, doctor identification information, etc.

22. Afterwards, Broadway RX somehow (fraudulently) established itself as a chain to Gardner's to complete the theft.

23. It is unlikely that Broadway RX is intercepting the prescriptions through pure cyber means if Gardner's new prescriptions are not touched by Broadway RX.

24. Broadway RX accessed Gardner's customer data which allowed Broadway RX to loot Gardner's prescription business.

25. Gardner's data was lost to Broadway RX, by transporting Gardner's customer information on disk, email, physical wires from Gardner's to his new pharmacy Broadway RX, remote access, program virus, or such other fraudulent means accessing Gardner's network, unauthorized use account, or a combination of the foregoing.

26. Given the close proximity of Gardner's and Broadway RX, it is possible that the theft of prescription business is the result of physical wires connecting the two pharmacies.

27. Another possibility is that the theft could be facilitated by a virus or program base on Gardner's network, to link the pharmacies as "chain pharmacies".

28. In either scenario, a theft has occurred of Gardner's data.

29. While the exact manner of the theft is unknown at this time, it is fact that Broadway RX is acting to steal Gardner's prescription data so that income is diverted to Broadway RX's account instead of Gardner's.

30. That was witnessed by Charles Robleson, Hartford's investigator.

31. The acts of Broadway RX constitutes theft of the Plaintiff's computer software and data.

32. The Policy owned by Gardner's covers this type of loss.

The Hartford Investigation

33. Hartford was notified of the computer fraud and sent investigator Charles Robleson to the insured premises to investigate.

34. Charles Robleson visited Gardner's on January 5th, 2017 and took a statement from Gloria Adorno.

35. Coincidentally, on the 5th of January Charles Robleson personally witnessed the theft committed in real-time that resulted in Broadway RX re-filling a customer prescription in Gardner's database.

36. Due to the complexity of this computer fraud, Hartford sent this claim to an outside forensics team Envista Forensics.

37. Envista Forensics conducted several phone interviews with Gloria Adorno.

38. In our last call, Envista was in the process of scheduling a visit to Gardner's for inspection of Gardner's computers.

39. That visit never happened because Hartford was not willing to pay the fees (approximately $15,000.00) to Envista Forensics.

40. My conversation with James Richard of Hartford on March 22nd, 2017 stated he would not proceed with the forensics onsite testing.

41. Later that day on the 22nd, Gardner's offered to accommodate Hartford by hiring independent IT investigation to determine the cause of the computer theft. James Richard of Hartford declined to answer that email.

42. Hartford finally hired a different forensics IT technician for an onsite inspection.

43. Jon Pullin of Loss Solutions Group visited Gardner's on April 7th, 2017.

44. Jon Pullin wrote a report of his findings attached as Exhibit A.

45. In sum, Jon Pullin was unable to determine the exact of cause of loss. Mr. Pullin concluded that the method of theft is unknown and a more thorough forensic investigation of Gardner's network and computer system is required to determine the exact cause of the theft. Exhibit A.

46. Hartford has not scheduled additional forensics testing.

47. Hartford concluded they "cannot determine that a theft of data as defined by the policy has occurred due to a covered cause of loss. If there is no covered event then business interruption does not trigger under the Policy....Unfortunately, your policy will provide coverage from lost data or software only if it was a result of direct physical loss...Since no covered loss can be determined by either theft, virus, or computer fraud, coverage will not trigger..." Exhibit A.

48. That conclusion is obviously erroneous because Gardner's is a victim of theft.

49. Hartford cannot counteract that fact.

50. Further, Hartford concludes that "we cannot determine that the alleged theft of data actually belonged to our insured at the time of the loss as it was somehow diverted before entering our insured's computer system". Exhibit A.

51. That is also obviously false.

52. If that customer data and their prescriptions do not "belong" Gardner's, whom does the prescription data belong to?

53. The customer prescriptions do belong to the insured. Gardner's has operated as a pharmacy storefront for over thirty years. The customer relationships and ongoing prescription business Gardner's property from years of operating as a pharmacy.

The Stolen Computer Data is the Plaintiff's Property

54. The re-fill prescriptions in Gardner's computers belong to Gardner's. The customer base is property of Gardner's. The income from that customer base is property of Gardner's. While

the original prescription is being paid, it is property of Gardner's. At the moment a prescription is scheduled to be re-filled that is also property of Gardner's.

55. Vergara and Abdelkader organized a brazen criminal scheme to loot Gardner's of over $1,000,000.00 of operating income with phony bank accounts. That money bankrolled Broadway RX.

56. To further that criminal scheme, Broadway RX is accessing and stealing Gardner's patient list data stored within Gardner's computers so prescription income is sent Broadway RX.

57. Hartford surely cannot say that data belongs to a neighboring pharmacy that was opened on the yield of a criminal scheme.

58. Like the phony bank accounts, the entire point of Broadway RX, Abdelkader, and Vergara's fraud is to loot Gardner's property.

59. Hartford's statement that the data did not "belong" to the insured defies logic.

60. Not only is Hartford's conclusion illogical, it demonstrates a bad faith, gross disregard for Gardner's horrific circumstance.

61. Hartford made no further attempt determine the cause of this theft as recommended in the report of Loss Solutions Group. Hartford unreasonably refused to further probe the cause of the computer theft.

62. Hartford reviewed the motions and exhibits in its lawsuit filed against Broadway RX.

63. Given their knowledge that their insured is a victim of massive criminal acts, they have made a bad faith decision to breach the Policy.

Hartford's Denial of Computer Fraud Coverage

64. Under the Computers & Media portion of the Policy, Hartford is required to pay for direct physical loss of computer data. Direct physical loss includes theft, defined under the Policy as the "act of stealing or attempt to steal."

### 3.   Extended Causes of Loss

Direct physical loss or physical damage to "computer equipment", "data" or "software" is extended to include the following:

**d.** Theft of "computer equipment" away from the "scheduled premises". Theft means an act of stealing or an attempt to steal. Theft includes loss of property from a known place when it is likely that the property has been stolen.

65. Gardner's is a victim of theft of over $1,000,000.00 from Gardner's operating income.

66. Continuing the criminal scheme, Gardner's customer data was (and is) being stolen by Broadway RX.

67. Hartford cannot dispute that.

68. Logic dictates that Broadway RX (through Vergara and Abdelkader) likely copied the data by disk or email to the Broadway RX network to see and complete the re-fill looting scheme.

69. Before, during, and after the re-fill theft occurs, Broadway RX, through its owners Vergara and Abdelkader, are taking action to steal from Gardner's so the payments are deposited into Broadway RX's account instead of Gardner's.

70. If this Court determines that a theft occurred of the Plaintiff's data, than Hartford is required to pay for Additional Coverages including Business Income, Extra Expense, Civil Authority, and Extended Business Income losses.

Case 2:17-cv-04420-DRH-GRB   Document 1-7   Filed 07/06/17   Page 14 of 40 PageID #: 14

71. That the actions of Broadway RX and Vergara caused (and continues to cause) disruption in the computer operations of Gardner's.

Hartford's Denial of Forgery

72. Hartford failed to pay Gardner's forgery claim.

73. The Policy reads:

### f.    Forgery

**(1)** We will pay for loss resulting directly from forgery or alteration of any check, draft, promissory note, or similar written promises, orders or directions to pay a sum certain in "money" that you or your at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee having use and custody of the property, at the "scheduled premises", or in transit between any of these places, resulting directly from:

**(a)** "Theft";

**(b)** Disappearance; or

**(c)** Destruction.

74. The checks annexed as <u>Exhibit B</u> were blatantly forged by Vergara as a result of his theft.

75. The checks were emailed to Hartford.

76. Despite repeated attempts to claim coverage of $25k for the forged checks, Hartford has ignored this claim.

77. Hartford's refusal to address this claim is further proof of its bad-faith and gross disregard of the Plaintiff's rights under the Policy.

Hartford's Denial of Identity Theft Coverage

78. Gardner's is covered for identity theft.

79. Hartford was provided copies of the pleadings in this lawsuit which include the application that stole Gardner's identity to open phony bank accounts at Flushing and TD Bank.

80. Despite repeated attempts to claim coverage for identity theft, Hartford has ignored this claim.

81. Those allegations were not denied by Vergara.

## FIRST CAUSE OF ACTION

### (breach of contract)

82. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs "1" through "81" with the same force and effect.

83. The Policy is a valid and enforceable contract.

84. Gardner's paid all premiums, provided prompt notice of the claims, and otherwise performed all obligations under the Policy.

85. Other than the $25,000.00 employee theft claim, Hartford has not paid any amounts to Gardner's. By failing to provide coverage for the Claims, Hartford has breached the terms of the Policy.

86. Gardner's is entitled to, inter alia, the following coverages under the Policy:

- Up to $1MM for loss of Business Income, Extra Expense, Civil Authority, and Extended Business Income losses.
- Identity theft
- Forgery Exhibit B.
- Legal fees
- Claim Expenses
- Coverage to rectify / replace the losses sustained due to the Computer Fraud and actual loss of business income sustained due to the period of restoration

87. As a direct and proximate result of Hartford's breach of the Policy, Gardner's has suffered damages in an amount to be determined at trial, plus consequential damages, attorneys' fees, and pre-judgment interest to the extent permitted by law.

88. Gardner's reserves its right to amend the coverages due under the Policy.

## SECOND CAUSE OF ACTION

### (Declaratory relief)

89. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs "1" through "88" with the same force and effect.

90. Pursuant to the Policy, Hartford is required to pay the following:

- Up to $1,000,000.00 for loss of Business Income, Extra Expense, Civil Authority, and Extended Business Income losses which resulted in theft of "data" and "software":

- Costs to cover costs to research, replace or restore "data" or "software"

- identity theft

- $25,000.00 for the forged checks written by Jorge Vergara from the phony Flushing Bank account after his termination from Gardner's Pharmacy

- blanked coverage for direct physical loss of or physical damage to Gardner's computers

- Costs to recover lost records and restore data

- Attorneys' fees

- Consequential damages

91. Gardner's is entitled to consequential damages.

92. An insured may recover foreseeable consequential damages, beyond the limits of the policy, where the insurer breaches its duty to investigate and settle claims in good faith. <u>Bi-Economy Mkt., Inc. v Harleysville Ins. Co. of N.Y; STV Group v American Cont. Props., 234 AD2d 50 [1996]).</u>

93. Even after the recommendation of Loss Solutions Group, Hartford has not thoroughly investigated this issue to make a final determination.

94. The Report does not conclude, with certainty, the cause of the theft. Without fully knowing the cause of theft of computer data, Hartford cannot make a fair evaluation to determine coverage.

95. The first forensics team Envista was not sent to the premises to inspect the computer equipment because the forensics fee of $15,000.00 was "too high".

96. Jon Pullin's report concludes that a more thorough analysis should be conducted to determine the exact manner of theft which Hartford has not done.

97. It is the obligation of the insurer to thoroughly investigate the facts and circumstances of a claim.

98. Hartford fails to follow through on the recommendation of Global Loss Solutions to further investigate. Thus, Gardner's is entitled to consequential damages.

99. Hartford's argument that a theft is 'alleged' is absurd. Hartford reviewed the pleadings and

evidence in Gardner's case filed against Broadway RX bearing index number 609576/2016. It

is even more absurd that Harford claims the data stolen does not "belong" to the insured. Such

a statement defies logic.

100. Hartford's poor conduct and mischaracterization of the facts shows its indifference to the

insured.

101. Hartford's unwillingness to investigate for its insured continues on its pattern of disregard

for the insured's interest. Gardner's is entitled to consequential damages because Hartford

breached its duty to investigate. Hartford has not acted in good faith to thoroughly test the

insured's hardware to determine the exact source of the theft.

102. Hartford has not acted in good faith by ignoring the identity theft and forgery Claims.

103. The checks annexed as Exhibit B is forgery by a non-employee. The checks are utterly

ignored by Hartford and further demonstrates Hartford's conscious or knowing indifference to

the insured's interests. Bennion v Allstate Ins. Co., 284 AD2d 924 [2001]).

104. Thus, Gardner's is entitled to special damages.

105. Gardner's reserves its right to amend and add to the relief sought under the second cause

of action.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff prays for relief as follows:

(a) on the First Cause of Action, based on Hartford's breach of the Policy, for damages in

an amount to be determined at trial, plus consequential damages, attorneys' fees, and

pre-judgment interest to the extent permitted by law;

(b) On the Second Cause of Action, declaring the Claims as coverable under the Policy

and directing Hartford to pay all coverable losses as provided in the Policy;

(c) Additionally, Plaintiff requests such other and further relief as the Court deems just and

proper

VERIFICATION: The undersigned, affirms under penalties of perjury, that he is a member
of the firm appearing as attorney of record for the Plaintiff, has read this complaint and
knows its contents, and that the same is alleged upon information and belief and believes it
to be true. Affirmant states that the grounds of his belief is correspondence furnished
to him by the Plaintiff and interviews with officers of the Plaintiff. This verification is made
by Affirmant because Plaintiff's place of business is located outside the County where
Affirmant maintains his law practice and the plaintiff has authorized me to make said
Verification on its behalf. This verification is affirmed on May 30, 2017.

DATED: New York, New York
        May 30, 2017

                                        /s/ John Manfredi
                                        John Manfredi, Esq.
                                        Manfredi Law Group, PLLC
                                        ATTORNEY FOR
                                        PLAINTIFF GARDNER'S PHARMACY INC.
                                        302 East 19th St. Suite 2A
                                        New York, New York 10003
                                        ph: (347) 614 7006

FILED: NASSAU COUNTY CLERK 05/31/2017 02:06 PM
NYSCEF DOC. NO. 1

INDEX NO.

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF NASSAU

Gardners Pharmacy, Inc.

*Plaintiff*

-against-

The Hartford Financial Services Group, Inc. a/k/a
The Hartford Insurance Group k

*Defendants*

SUMMONS AND VERIFIED COMPLAINT

Signature (Rule 130-1.1-a)

*/s/ John S. Manfredi*
John S Manfredi

Manfredi Law Group, PLLC
Attorney for Plaintiff
302 East 19th St. Suite 2A
New York, New York 10003
Phone (347) 614 7006
Fax (347) 332 1740

**Service of a copy of the within _____ is hereby admitted.**
**Dated,**

Attorney(s) for

**Sir: Please take notice**
*NOTICE OF ENTRY*
That the within is a (certified) true copy of a duly entered in the office of the clerk of the within named court on

*NOTICE OF SETTLEMENT*

That an order _____ of which the within is a true copy of a Settlement to the HON.
presented for one of the judges

Of the within named Court, at
On the __ day of _____2017 at _____AM
Dated,

FILED: NASSAU COUNTY CLERK 05/31/2017 02:06 PM          INDEX NO. 604999/2017
NYSCEF DOC. NO. 2                                        RECEIVED NYSCEF: 05/31/2017

Exhibit A

FILED: NASSAU COUNTY CLERK 05/31/2017 02:06 PM   INDEX NO. 604999/2017
NYSCEF DOC. NO. 2                                              RECEIVED NYSCEF: 05/31/2017



Loss Solutions Group, LLC
Toll Free 866.899.8756
Fax 860.639.5158
www.losssolutionsgroup.com

April 25, 2017

Ms. Tonya Barbee
The Hartford
P.O. Box 14268
Lexington, KY 40512-4268

RE:  Insured:              Gardners Pharmacy, Inc.
     Claim Number:         CP0017164803
     LSG Matter Number:    427800.5355-00
     Date of Loss:         November 28, 2016

Dear Ms. Barbee,

Thank you for choosing Loss Solutions Group as your equipment loss consultant. This report serves to provide an analysis of the above-referenced claim.

*Assignment:*

Loss Solutions Group was contacted by Mr. Aaron Swartz of The Hartford. The scope of this assignment was to address of scope of damage and cause of loss associated with the reported interception of electronic medical prescriptions. Since receipt of this matter, claim handling has been assumed by Ms. Tonya Barbee, also of The Hartford.

*Findings and Analysis:*

Loss Solutions Contacted the insured, Gardner's Pharmacy, Inc., to discuss the matter and spoke with Attorney John Manfredi (Manfredi Law Group, 347-614-7006) and Ms. Gloria Adorno (Gardner's Pharmacy, 516-506-9358). We reviewed the scope of our assignment with Attorney Manfredi, as well as known details regarding the reported cause of loss and circumstances surrounding such. Ms. Adorno provided an overview of the pharmacy's daily operations and noted reported issues attributed to the loss.

Loss Solutions Group conducted an inspection at the loss location (371 Broadway, Brooklyn, New York 11211) on April 7, 2017. Mr. Jon Pullin, technical consultant for Loss Solutions Group and this undersigned, met Attorney Manfredi and Ms. Adorno at the loss location to conduct an inspection of the insured's computer systems and network. Such is described in our Cause of Loss statement below.

---

Claims Solutions by Experts and Engineers

---

Electrical | Structural | Mechanical | Technical

FILED: NASSAU COUNTY CLERK 05/31/2017 02:06 PM       INDEX NO. 604999/2017
NYSCEF DOC. NO. 2                                    RECEIVED NYSCEF: 05/31/2017

Insured: Gardners Pharmacy, Inc.                              Page 2
Claim Number: CP0017164803
LSG Matter Number: 427800.5355-00

**Scope of Damage**

Attorney Manfredi and Ms. Adorno stated that a former long-term employee of Gardner's Pharmacy opened a competing pharmacy near the insured's place of business and had reportedly been intercepting electronic prescriptions intended for Gardner's Pharmacy. Details regarding such are presented below.

Reported Electronic Prescription Interceptions

The insured's computer systems receive electronic prescriptions from generating doctor offices. The offices utilizes a code-base system that identifies the patient's preferred pharmacy. The generating doctor's office then sends a prescription to InterRX, a cloud-based third party vendor that maintains a database of pharmacy identification codes. InterRX identifies the correct pharmacy and then routes the prescription. In this case, Gardner's Pharmacy receives the electronic prescription to a computer, which then prints such to a printer.

Attorney Manfredi and Ms. Adorno both stated that another pharmacy was reportedly intercepting electronic prescriptions that were sent from various doctor offices to Gardner's Pharmacy. Ms. Adorno stated that in some instances the electronic prescriptions were not received by Gardner's Pharmacy, while in other instances the competing pharmacy reported also received the prescriptions and filled them first, followed by contacting the patient to notify them their prescriptions had been filled at that location rather than the intended pharmacy.

Software Vendor Contact: InterRX Software Support

Loss Solutions Group contacted InterRX Software Support (973-256-7633) and spoke with Ms. "Ruth." Ms. "Ruth" was able to access Gardner's Pharmacy's database entry and noted that no additional points of contact or computer systems were linked to the insured's InterRX identification code number. Ms. "Ruth" also verified that Gardner's Pharmacy was not identified as a "chain" or a collection of pharmacies under one (1) central corporation.

We described the insured's reported ongoing loss (interception of electronic scripts by an unauthorized party) and queried Ms. "Ruth" as to possible methods by which such could be accomplished. Ms. "Ruth" stated that there were no software or database settings which would allow electronic scripts sent by a doctor's office to be sent to another pharmacy using Gardner's Pharmacy's identification code number, so the most likely method would be interception once the electronic script was received by the insured via a network or computer vulnerability.

Site Inspection Observations

This undersigned conducted an inspection at the loss location and was provided with access to the insured's place of business and computer/networking equipment. The insured's network, relevant to this claim, consists of two (2) desktop computers, one (1) printer, a wireless access point (WAP) set

FILED: NASSAU COUNTY CLERK 05/31/2017 02:06 PM        INDEX NO. 604999/2017

NYSCEF DOC. NO. 2                                                        RECEIVED NYSCEF: 05/31/2017

Insured: Gardners Pharmacy, Inc.                                    Page 3
Claim Number: CP0017164803
LSG Matter Number: 427800.5355-00

for guest access, an internal wireless network, and a combination firewall/cable modem/wireless router.

The location is a storefront that shares exterior walls with other businesses. Ms. Adorno identified the competing pharmacy reportedly operated by the insured's former employee, which was located three (3) storefronts away and connected to the same building.

This undersigned noted the two (2) desktop computers were utilizing the Windows XP operating system, which is no longer updated or supported by the software manufacture, Microsoft. Network cabling to and from the firewall unit was not labeled and included at least one (1) additional network cable than was required for a connection to the printer, computers and WAP.

This undersigned conducted a review of software applications/programs resident within the insured's desktop computers and did not note any unauthorized application processes. However, a review of user accounts identified a "Superuser" account of which Ms. Adorno reportedly had no knowledge. A general user account utilized by pharmacy personnel and an administrator account utilized by the InterRX support team were also identified by this undersigned.

Ms. Adorno stated that electronic prescriptions would be received by the two (2) desktop computers and automatically printed to the attached printer. A pharmacist would then utilize the printed prescription to fill the medicine order, and then notify the application which received the prescription that such had been filled. This undersigned witnessed this process during our site inspection.

## Cause of Loss

The basis of the loss is the reported interception of electronic prescriptions by an unauthorized party. Loss Solutions Group interviewed the software vendor (InterRX) and conducted an inspection of the loss location and network/computer equipment therein. Our analysis indicates there are multiple possibilities by which an unauthorized party may intercept the electronic prescriptions, as reported by the insured and addressed below:

### Windows XP Operating System Vulnerabilities

- Microsoft, the manufacturer of the Windows XP Operating System (OS), ended mainstream support for the program on April 14, 2009. The last official security patch was released on May 1, 2014. As the operating system is no longer officially updated, numerous security vulnerabilities and exploits have been documented as a result of this lack of official update/support, including an Industrial Control Systems Cyber Emergency Response Team (ICE-CERT) bulletin released on February 10, 2015 (link: https://ics-cert.us-cert.gov/alerts/ICS-ALERT-15-041-01). As such, the two (2) desktop computers utilized by the insured represent a security vulnerability which may be exploited by unauthorized parties utilizing a variety of measures.

Insured: Gardners Pharmacy, Inc.                                    Page 4
Claim Number: CP0017164803
LSG Matter Number: 427800.5355-00

Network Cabling/Physical Location

This undersigned noted extensive network cabling throughout the insured's place of
business. This cabling was observed to run along the length of interior walls, as well as
egress into the ceiling overhead. The typical path for network cabling originates at the
internet service provider (ISP) connection panel, continues to a cable modem, and is
distributed thereafter to various networked components either directly or via
routers/switches.

In this case, network cabling was observed by this undersigned to originate at the ISP's
connection panel to a firewall, which was utilized as a cable modem, router, and wireless
network broadcast point. Cabling was then routed from the combination firewall device to
two (2) network computers, a printer, and a wireless access point.

Additional cables were observed to originate from the firewall but the connection point for
such could not be identified by this undersigned as it appeared to egress into the ceiling
overhead. The insured was unaware of what the network cabling was connected to or the
purpose/function of additional cabling observed by this undersigned throughout the insured's
place of business.

As there is no clearly defined topography or understanding of the observed network cabling's
function/termination, such represented a security vulnerability by which access to the
insured's network may be obtained by unauthorized parties.

We note that, as per the insured's statements and those of Attorney Manfredi, the former
employee which they identified as the most likely source of the electronic prescription
interception reportedly had unrestricted access to the insured's place of business and, as the
individual's pharmacy was in close physical proximity, it is possible that network cabling
was installed to the new location. This undersigned's/Loss Solutions Group's observations
only support that such is feasible but was not verified during the course of our on-site
inspection.

Wireless Network Access

The insured utilizes two (2) wireless networks. One (1) network functions as a "Guest"
account, granting free Wi-Fi access to the insured's customers. The second wireless network
is utilized by the insured's staff. The insured did not present technical knowledge regarding
either wireless networks and, as such, access to the networks represents a potential intrusion
method by unauthorized individuals.

Unauthorized User Account

This undersigned noted the presence of a "Superuser" account resident within the insured's
desktop computer. Ms. Adorno stated that she was unaware of the Superuser account and
noted that only an administrator account and a general employee user account were supposed

Insured: Gardners Pharmacy, Inc.                                    Page 5
Claim Number: CP0017164803
LSG Matter Number: 427800.5355-00

to be present. The Superuser account was observed to have network access privileges, including the ability to network-share printer and file resources. As such, full networked file and device access by unauthorized parties utilizing this account represents a potential security intrusion method.

Remote Access

The insured utilizes software for remote access to the pharmacy's network. Ms. Adorno stated that she uses such from a home-based computer when she is not able to be at the insured's place of business. There are a number of methods by which this connection could be utilized by unauthorized parties, including direct access using the insured's credentials or indirect access via software/hardware intrusion at the insured's residence.

Cause of Loss Summation

This undersigned observed and identified the above security vulnerabilities during an inspection at the loss location. This undersigned shared these observations with Ms. Adorno and Attorney Manfredi prior to departure from the site inspection. No third-party applications, viruses or malware programs were observed by this undersigned to be resident within the insured's computer systems. The reported unauthorized interception/accessing of electronic prescription data by an outside party was not observed by this undersigned during our site inspection. The unauthorized interception of such was reported by the insured and the insured's legal representative. The most likely source of the reported intrusion and interception of electronic prescriptions is via unauthorized access utilizing any of the security vulnerabilities observed and identified above.

We note that a thorough forensic evaluation of the insured's networking and computer systems would be required to identify the exact method of electronic prescription interception. Loss Solutions Group is unable to determine if unauthorized access was initially established by an individual who was actively employed or if the access occurred by a non-employee. Our assignment to this matter did not include an investigation of computer systems reportedly utilized by the former employee suspected by the insured to be the responsible party and no evidence which identifies the responsible party was observed by this undersigned.

Cause of Loss Conclusion

Loss Solutions Group submits the cause of loss is unknown for this claim. The reported interception of electronic prescription information was not observed by this undersigned. However, as such was reported by the insured and the insured's legal representative, the most likely method which may have occurred is via unauthorized access of the insured's network and/or computer systems via security vulnerabilities identified in this report.

FILED: NASSAU COUNTY CLERK 05/31/2017 02:06 PM INDEX NO. 604999/2017
NYSCEF DOC. NO. 2                                          RECEIVED NYSCEF: 05/31/2017

Insured: Gardners Pharmacy, Inc.                          **Page 6**
Claim Number: CP0017164803
LSG Matter Number: 427800.5355-00

*Summary:*

Loss Solutions Group's findings herein are based upon all information that was available at the time
of this writing. The opinions are based upon reviewed documentation, interviews, research,
experience, historical references, training and education.

1. The insured, Gardner's Pharmacy, Inc., submitted a claim as a result of the reported
   unauthorized interception of electronic prescription data.

2. In review of this matter, Loss Solutions Group contacted the insured and the insured's legal
   representative, and conducted an inspection at the insured's place of business in order to
   establish the scope of damage and cause of loss for this claim.

3. Loss Solutions Group identified several potential security vulnerabilities by which an
   unauthorized party may gain access to the insured's computer systems. Details of such are
   identified within this report.

If you have any questions or if you need any additional information, please feel free to
contact Jon Pullin at (866) 899-8756 ext. 727, or via email at
jpullin@losssolutionsgroup.com. Team Leader Rich Curtis can be reached at (866) 899-
8756 ext. 702, or via email at rcurtis@losssolutionsgroup.com.

Best regards,

Jon Pullin
Technical Consultant
Loss Solutions Group, LLC

Claims Solutions by Experts and Engineers

Electrical | Structural | Mechanical | Technical

Case 2:17-cv-03988-ADS-SIL Document 1 Filed 07/05/17 Page 28 of 40 PageID #: 28



THE HARTFORD
COMMERCIAL PROPERTY CENTER
PO BOX 14261
LEXINGTON KY 40512

May 3, 2017

-- 02 000450 44286 H 2 A404

MANFREDI LAW GROUP, PLLC
302 E 19TH ST APT 2A
NEW YORK NY 10003

Re:  Insured:        GARDNERS PHARMACY, INC.
     Claimant:       GARDNERS PHARMACY, INC.
     Date of Loss:   November 28, 2016
     Policy Number:  12SBAUL3824
     Event Number:   CP0017164803
     Claim Number:   Y44 B 62264

Dear Manfredi Law Group, PLLC,

We are in receipt of a claim from Gardners Pharmacy, Inc for theft and computer fraud as the result of data interception from an unknown individual/entity. This loss is reported to have occurred to property located at 140 371 Broadway, Brooklyn, NY 11211. We hired Loss Solutions Group (LSG) to assess the loss and to attempt to verify the cause as the insured has alleged the prescriptions are being diverted to another pharmacy a few doors down from the insured location. Through LSG's investigation they have confirmed that there was no malware present on Gardner's Computer system nor was there any proof of an ongoing active hack. In discussion with InterRX it has been determine that Gardner's system has no other point of contact or computer systems linked to their InterRx identification code number. LSG has proposed several different ways in which data could be potentially breach however there was no evidence to support any breach.

As we cannot determine that a theft of data as defined by the policy has occurred due to a covered cause of loss we must respectfully disclaim coverage for this loss. If there is no covered event then business interruption does not trigger under the policy.

Gardners Pharmacy, Inc.'s policy is written under policy number 12 SBA UL3824 with the effective dates of 12/26/2015 to 12/26/2016. Please refer to **SPECIAL PROPERTY COVERAGE FORM SS 00 07 07 05** which states in pertinent part:

**"SPECIAL PROPERTY COVERAGE FORM**
Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.
Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.
Other words and phrases that appear in quotation marks have special meaning. Refer to the SECTION **G** - PROPERTY DEFINITIONS.

**A. COVERAGE**

PT00019

FILED: NASSAU COUNTY CLERK 05/31/2017 02:06 PM          INDEX NO. 604999/2017
NYSCEF DOC. NO. 2                                        RECEIVED NYSCEF: 05/31/2017

We will pay for direct physical loss of or physical damage to Covered Property at the premises described in the Declarations (also called "scheduled premises" in this policy) caused by or resulting from a Covered Cause of Loss.

1. **Covered Property**

    Covered Property as used in this policy, means the following types of property for which a Limit of Insurance is shown in the Declarations:

    a. **Buildings,** meaning only building(s) and structure(s) described in the Declarations, including:

       (1) Completed additions;
       (2) Permanently installed:
           (a) Fixtures;
           (b) Machinery; and
           (c) Equipment;
       (3) Outdoor fixtures;
       (4) Your personal property in apartments, rooms or common areas furnished by you as landlord;
       (5) Building Glass, meaning glass that is part of a building or structure;
       (6) Personal property owned by you that is used to maintain or service the buildings or structures on the premises, including:
           (a) Fire extinguishing equipment;
           (b) Outdoor furniture;
           (c) Floor coverings; and
           (d) Appliances used for refrigerating, ventilating, cooking, dishwashing   or laundering; and
       (7) If not covered by other insurance:
           (a) Additions under construction, alterations and repairs to the buildings or structures;
           (b) Materials, equipment, supplies and temporary structures, on or within 1,000 feet of the "scheduled premises", used for making additions, alterations or repairs to the buildings or structures.

    b.     **Business Personal Property** located in or on the building(s) described in the Declarations at the "scheduled premises" or in the open (or in a vehicle) within 1,000 feet of the "scheduled premises", including:

       (1) Property you own that is used in your business;
       (2) Tools and equipment owned by your employees, which are used in your business operations;
       (3) Property of others that is in your care, custody or control;
       (4) "Tenant Improvements and Betterments"; and
       (5) Leased personal property for which you have contractual responsibility to insure, unless otherwise provided for under Personal Property of Others.

2. **Property Not Covered**

i. "Data" and "software" which exists on electronic "media" including the cost to research, replace or restore them, except as may be provided for in any Additional Coverages or Optional Coverages.

3. **Covered Causes of Loss**

    RISKS OF DIRECT PHYSICAL LOSS unless the loss is:

    a. Excluded in Section **B., EXCLUSIONS;** or
    b. Limited in Paragraph **A.4.** Limitations; that follow.

4. **Limitations**

    a. We will not pay for direct loss of or damage to:

       (1) Property that is missing, where the only evidence of the direct physical loss or physical damage is a shortage disclosed upon taking inventory, or other instances where there is no physical evidence to show what happened to the property.  This limitation does not apply to the "Additional Coverage" for "Money" and "Securities".
       (2)    Property that has been transferred to a person or to a place outside the "scheduled premises" on the basis of unauthorized instructions.

5. **Additional Coverages**



PT00019

FILED: NASSAU COUNTY CLERK 05/31/2017 02:06 PM          INDEX NO. 604999/2017
NYSCEF DOC. NO. 2                                          RECEIVED NYSCEF: 05/31/2017

**i. Money and Securities**

    **(1)** We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee having use and custody of the property, at the "scheduled premises", or in transit between any of these places, resulting directly from:

        **(a)** "Theft";

        **(b)** Disappearance; or

        **(c)** Destruction.

    **(2)** In addition to the Limitations and Exclusions applicable to property coverage, we will not pay for loss:

        **(a)** Resulting from accounting or arithmetical errors or omissions;

        **(b)** Due to the giving or surrendering of property in any exchange or purchase; or

        **(c)** Of property contained in any "money"-operated device unless a continuous recording instrument in the device records the amount of "money" deposited in the "money"-operated device.

    **(3)** The most we will pay for loss in any one occurrence is:

        **(a)** The limit shown in the Declarations for Inside the Premises for "money" and "securities" while:

            **(i)** In or on the "scheduled premises"; or

            **(ii)** Within a bank or savings institution; and

        **(b)** The limit shown in the Declarations for Outside the Premises for "money" and "securities" while anywhere else.

    **(4)** All loss:

        **(a)** Caused by one or more persons; or

        **(b)** Involving a single act or series of related acts; is considered one occurrence.

    **(5)** You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

**o. Business Income**

    **(1)** We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet of the "scheduled premises", caused by or resulting from a Covered Cause of Loss.

    **(2)** With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the "scheduled premises" are located, your "scheduled premises" also means:

        **(a)** The portion of the building which you rent, lease or occupy; and

        **(b)** Any area within the building or on the site at which the "scheduled premises" are located, but only if that area services, or is used to gain access to, the "scheduled premises".

    **(3)** We will only pay for loss of Business Income that occurs within 12 consecutive months after the date of direct physical loss or physical damage.

    This Additional Coverage is not subject to the Limits of Insurance.

    **(4)** Business Income means the:

        **(a)** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no direct physical loss or physical damage had occurred; and

        **(b)** Continuing normal operating expenses incurred, including payroll.

    **(5)** With respect to the coverage provided in this Additional Coverage, suspension means:

        **(a)** The partial slowdown or complete cessation of your business activities; or

        **(b)** That part or all of the "scheduled premises" is rendered untentantable as a result of a Covered Cause of Loss if coverage for Business Income applies to the policy.

**p. Extra Expense**

PT00019

FILED: NASSAU COUNTY CLERK 05/31/2017 02:06 PM   INDEX NO. 604999/2017

NYSCEF DOC. NO. 2                                                        RECEIVED NYSCEF: 05/31/2017

(1) We will pay reasonable and necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or physical damage to property at the "scheduled premises", including personal property in the open (or in a vehicle) within 1,000 feet, caused by or resulting from a Covered Cause of Loss.

(2) With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the "scheduled premises" are located, your "scheduled premises" also means:

    (a)    The portion of the building which you rent, lease or occupy; and

    (b)    Any area within the building or on the site at which the "scheduled premises" are located, but only if that area services, or is used to gain access to, the "scheduled premises".

(3) Extra Expense means expense incurred:

    (a)    To avoid or minimize the suspension of business and to continue "operations":

        (i)  At the "scheduled premises"; or

        (ii) At replacement premises or at temporary locations, including:

            (aa) Relocation expenses; and

            (aa) Cost to equip and operate the replacement or temporary location, other than those costs necessary to repair or to replace damaged stock and equipment.

    (b)    To minimize the suspension of business if you cannot continue "operations".

    (c)    (i) To repair or replace any property; or

        (ii) To research, replace or restore the lost information on damaged "valuable papers and records"; to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional Coverage o., Business Income. We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or physical damage. This Additional Coverage is not subject to the Limits of Insurance.

(4) With respect to the coverage provided in this Additional Coverage, suspension means:

    (a) The partial slowdown or complete cessation of your business activities; or

    (b) That part or all of the "scheduled premises" is rendered untentantable as a result of a Covered Cause of Loss if coverage for Extra Expense applies to the policy.

(5) **Limitation**

This Extra Expense Coverage does not apply to:

    (a) Any deficiencies in insuring building or business personal property; or

    (b) Any expense related to any recall of products you manufacture, handle or distribute.

**6. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building at the "scheduled premises" or in the open (or in a vehicle) within 1,000 feet of the "scheduled premises". All Coverage Extensions are subject to the terms, conditions and exclusions of this policy, except as otherwise provided.

In addition to the Limits of Insurance, you may extend the insurance provided by this policy as follows:

**c. Data and Software**

We will pay up to $10,000 in any one occurrence to cover your costs to research, replace or restore "data" or "software" which exists or existed on electronic or magnetic "media" that is lost or damaged as a result of direct physical loss or physical damage to "computer equipment" at the "scheduled premises".

**G. PROPERTY DEFINTIONS**

**1.** "Computer" means a programmable electronic device that can store, retrieve and process "data".

**2.** "Computer Equipment" means "computers", "peripheral devices", "media" and manuals that are purchased to be used in conjunction with hardware and "software".

**4.** "Data" means information or facts stored in a "computer's" memory, on "software" or on "media".

**7.** "Media" means the material used solely with the "computer" or "peripheral device" upon which

PT00019

Case 2:17-cv-03988-ADS-SIL  Document 1  Filed 07/05/17  Page 32 of 40 PageID #: 32

"software" or "data" is stored, such as tapes, CD-ROMs or disks.

13. "Peripheral Device" means any physical unit used to operate the "computer" that cannot be used for Purposes other than as part of the computer's system, such as tape or disk drives, printers, or modems."

You may also refer to **SPECIAL PROPERTY COVERAGE AMENDATORY ENDORSEMENT FORM SS 00 61 09 15** which states in part:

"**B. EXCLUSIONS**

2. The following is added to **Exclusions B.1:**

   h. **Electronic Vandalism or Corruption of "Electronic Data" or Corruption of "Computer Equipment"**

   This exclusion does not apply if SS 14 29 Electronic Vandalism or SS 40 08 Electronic Vandalism has been made part of this policy.

   Electronic Vandalism or Corruption of "Electronic Data" or Corruption of "Computer Equipment" which means:

   (1) A virus, malicious code or similar instruction introduced into or enacted on a computer system (including "electronic data") or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation.

   (2) Unauthorized viewing, copying or use of electronic data (or any proprietary or confidential information or intellectual property in any form) by any person, even if such activity is characterized as "theft";

   (3) Error or omissions in programming or processing "electronic data";

   (4) Errors or deficiency in design, installation, maintenance, repair or modification of your computer system or any computer system your computer system is connected or on which your system depends (including "electronic data")

   (5) Manipulation of your computer system, including "electronic data", by an employee, volunteer worker or contractor, for the purpose of diverting or destroying "electronic data" or causing fraudulent or illegal transfer of any property;

   (6) Interruption in normal computer function or network service or function due to insufficient capacity to process transactions or to an overload of activity on the system or network;

   (7) Unexplained or indeterminable failure, malfunction or slowdown of a computer system, including "electronic data" and the inability to access or properly manipulate the "electronic data";

   (8) Complete or substantial failure, disablement or shutdown of the Internet, regardless of the cause;

   (9) The inability of a computer system to correctly recognize, process, distinguish, interpret or accept one or more dates or times."

Please see **SUPER STRETCH FOR BUSINES SERVICES Form SS 04 08 09 07** which states in pertinent part:

"**A.** The following changes apply to the Standard Property Coverage Form, Additional Coverages, **A.4.,** or to the Special Property Coverage Form, Additional Coverages **A.5.:**

**4. Computer Fraud**

The following Additional Coverage is added:

We will pay up to $5,000 in any one occurrence for physical loss of or physical damage to "money", "securities", and other property having intrinsic value resulting directly from computer fraud. Computer fraud means any act of stealing property following and directly related to the use of any computer to fraudulently cause a transfer of that property from inside your premises or from a banking institution or similar safe depository, to a person (other than a "messenger") outside those premises or to a place outside those premises.

PT00019

FILED: NASSAU COUNTY CLERK 05/31/2017 02:06 PM        INDEX NO. 604999/2017
NYSCEF DOC. NO. 2                                      RECEIVED NYSCEF: 05/31/2017

This Limit of Insurance is in addition to any other Limit of Insurance that may be provided by this policy for this coverage."

Please also refer to **COMPUTERS AND MEDIA FORM SS 04 41 04 09** which states in part:

"**A. Computer Equipment, Data and Software**
    **1. Coverage**
        We will pay for direct physical loss of or physical damage, to "computer equipment" and the cost to research, replace or restore physically lost or physically damaged "data" and "software" subject to Limit of Insurance shown in the Declarations for Computers and Media while anywhere within the policy territory, and while in transit, but only if:
        **a.** Owned by you; or
        **b.** Owned by others but in your care custody and control regardless of whether you use it for personal or business use."

Unfortunately, as described above, your policy will provide coverage for lost data or software only if it was the result of direct physical loss or physical damage to the computer equipment per the specialist's review we cannot determine that the alleged theft of data actually belonged to our insured at the time of loss as it was somehow diverted before entering our insured's computer system. Since no covered cause of loss can be determined by either theft, virus or computer fraud, coverage will not trigger for a business interruption claim.

In view of the above policy provisions, we regret that no payment can be made for this loss. By this letter and its investigation of this matter, "Sentinel" does not intend to, nor does it waive, alter, invalidate, extend or otherwise offset or prejudice any of its rights under the aforementioned insurance policy, and all rights are specifically reserved. Additionally, "Sentinel" specifically reserves the right to assert additional policy limitations and/or exclusions not previously mentioned which may later become apparent

Please be advised that nothing contained within this document nor any act of this company or its representatives is to be construed as a waiver of any known or unknown defense we may have under this policy. Nor does this letter waive or change any provisions or conditions of the policy. Additionally, the foregoing in no way restricts or limits this company from relying upon and asserting other facts and grounds that are, or may become available to it.

Thank you for your cooperation and assistance during the investigation of your claim.
)

We are required to inform you that under Regulation 64 of the New York State Department of Financial Services, any legal action which you may elect to take against this company regarding this claim must be brought within two years of the date of loss.

Sincerely,

*Tonya Barbee*

Tonya Barbee
Sr. Claim Rep
Phone: (800) 236 - 0398 Ext. 2307547
Fax: (866) 809 - 0964
tonya.barbee@thehartford.com

Writing Company Name: Sentinel Insurance Company, Ltd.

Enclosures:     LSG Report

PT00019

FILED: NASSAU COUNTY CLERK 05/31/2017 02:06 PM
NYSCEF DOC. NO. 3

INDEX NO. 604999/2017
RECEIVED NYSCEF: 05/31/2017

Exhibit B

Case 2:15-cr-00XXX-ADS-SIL Document 1 Filed 07/05/17 Page 35 of 40 PageID #: 35
RECEIVED NYSCEF: 05/31/2017



GARDNER'S PHARMACY INC
371 BROADWAY
BROOKLYN, NY 11211

1050

DATE 8/10/15

PAY TO THE ORDER OF: Broadway RX LLC                 $ 5,000.00

Five Thousand ⁰⁰/₁₀₀                                   DOLLARS

Flushing Bank
217 Heemeyer Street
Brooklyn, NY 11211

FOR

⑈00⑈1050⑈ ⑆2260704740⑆ 198410595⑈

Date:08/13/2015 Account:198410595 Amount:$5,000.00 Serial:1050 Sequence:449030870 TR:226070474
TranCode:0 InstID:15 DbCr:D Pattern:1

RECEIVED NYSCEF: 05/31/2017



**GARDNER'S PHARMACY INC**
371 BROADWAY
BROOKLYN, NY 11211

1052

DATE 9/19/15

PAY TO THE ORDER OF _Broadway Rx LLC._          $ 6,316.70

_Six Thousand Three Hundred Sixteen 70/100_ ———— DOLLARS

Flushing Bank
217 Havemeyer Street
Brooklyn, NY 11211

FOR _merchandise_

⑈004052⑈ ⑈226070474⑈ 198410595⑈

Date:09/22/2015 Account:198410595 Amount:$6,316.70 Serial:1052 Sequence:493228730 TR:226070474
TranCode:1052 InstID:15 DbCr:D Pattern:1

GARDNER'S PHARMACY INC
371 BROADWAY
BROOKLYN, NY 11211

1053

DATE 10/29/15

PAY TO THE ORDER OF  Rebecca School                    $ 28,738.00

Twenty Eight Thousand Seven Hundred Thirty Eight 00/100  DOLLARS

Flushing Bank
217 Havemeyer Street
Brooklyn, NY 11211

FOR _____

⑈0010530  ⑆226070474⑆ 198410595⑈

Date:11/04/2015 Account:198410595 Amount:$28,738.00 Serial:1053 Sequence:544405830 TR:226070474
TranCode:0 InstID:15 DbCr:D Pattern:1

PAY TO THE ORDER OF
CAPITALONE BANK, N.A.
021407912
FOR DEPOSITS ONLY
REBECCA SCHOOL LLC
2714050776

For Deposit Only
Rebecca School LLC
2714050776

>0650000090<
CAPITAL ONE, NA
0011868324     11032015
RICHMOND, VA 369 21
Deposit     2714050776

# EXHIBIT 2

FILED: NASSAU COUNTY CLERK 06/07/2017 01:14 PM    INDEX NO. 604999/2017

NYSCEF DOC. NO. 4    RECEIVED NYSCEF: 06/07/2017



## SUPREME COURT OF THE STATE OF NEW YORK
### COUNTY OF NASSAU

### AFFIDAVIT OF SERVICE

*2574284*

Index no :604999/2017

| Plaintiff(s): | GARDNER'S PHARMACY, INC. |
|---|---|
| Defendant(s): | THE HARTFORD FINANCIAL SERVICES GROUP, INC. A/K/A THE HARTFORD INSURANCE GROUP |

STATE OF NEW YORK
COUNTY OF SUFFOLK      ss.:

**Melvin Rolfe**, the undersigned, being duly sworn, deposes and says that I was at the time of service over the age of eighteen and not a party to this action. I reside in the STATE OF NEW YORK.

On 06/02/2017 at 1:35 PM, I served the within SUMMONS AND COMPLAINT AND E-FILE NOTICE Bearing Index Number 604999/2017 and date of filing of 05/31/2017 on THE HARTFORD FINANCIAL SERVICES GROUP, INC. A/K/A THE HARTFORD INSURANCE GROUP at 277 PARK AVENUE , NEW YORK, NY 10172 in the manner indicated below:

CORPORATE SERVICE: By delivering a true copy of said documents to MR. TRIMARCHI, CLERK of the above named corporation. The undersigned asked the recipient if he/she is authorized to accept service on behalf of THE HARTFORD FINANCIAL SERVICES GROUP, INC. A/K/A THE HARTFORD INSURANCE GROUP, and the recipient responded in the affirmative.

Comments: 16TH FLOOR

A description of the defendant, or other person served on behalf of the defendant is as follows:

| Sex | Color of skin/race | Color of hair | Age | Height | Weight |
|---|---|---|---|---|---|
| Male | White | Black | 50 | 5ft8in-5ft11in | 225-250 lbs |
| Other Features: GLASSES MOUSTACHE | | | | | |

Sworn to and subscribed before me on

6/7/17

X_____
Melvin Rolfe
License#: 0915782
Alstate Process Service Inc.
60 Burt Drive
Deer Park,NY 11729
631/667-1800

Notary Public,

MANFREDI LAW GROUP, PLLC
302 EAST 19TH STREET
SUITE 2A
NEW YORK,NY 10003
347-614-7006

Atty File#: HARTFORD 0601

MARY WITCOMB .
Notary Public, State of New York
No. 01WI6285680
Qualified in Nassau County
Commission Expires July 8, 2021

FILED: NASSAU COUNTY CLERK 06/07/2017 01:14 PM   INDEX NO. 604999/2017
NYSCEF DOC. NO. 5                                    RECEIVED NYSCEF: 06/07/2017



*2574284*

## Affidavit of Service by Mail
PURSUANT TO CPLR 3215

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

| | |
|---|---|
| GARDNER'S PHARMACY, INC.<br><br>-against-<br><br>THE HARTFORD FINANCIAL SERVICES GROUP, INC. A/K/A THE HARTFORD INSURANCE GROUP | Att File: HARTFORD 0601<br>Internal Id: 2574284<br>Index: 604999/2017<br>S & C Filed: 05/31/2017 |

State of New York
County of Suffolk    ss.:

Lisa Downs being duly sworn, deposes and says deponent is not a party to this action and is over the age of eighteen years and resides in the State of New York.

That on **June 06, 2017** Deponent mailed a copy of the **SUMMONS and 1303 Notice** in this action on those defendants listed below by first class mail in an envelope bearing the legend "personal and confidential" and not indicating on the outside of the envelope that the communication is from an attorney or concerns an alleged debt.

Defendant(s):    THE HARTFORD FINANCIAL SERVICES GROUP, INC. A/K/A THE HARTFORD
INSURANCE GROUP
277 PARK AVENUE , NEW YORK, NY 10172

Said mailing(s) was made to the Defendant(s) place of business.

The foregoing statements are true, under penalty of perjury.

Sworn to before me on :  6|7|17

Lisa Downs

MARY WITCOMB
Notary Public, State of New York
No. 01WI6285680
Qualified in Nassau County
Commission Expires July 8, 2021

Alstate Process Service Inc. - 60 Burt DriveDeer Park, NY11729 - Tel: 631/667-1800 - Fax: 631/667-0302
MANFREDI LAW GROUP, PLLC - 302 EAST 19TH STREET NEW YORK, NY 10003 347-614-7006