UNITED STATES DISTRICT COURT  INDEX NO.   2:17-cv-3988
EASTERN DISTRICT OF NEW YORK
Gardner's Pharmacy, Inc.

                          Plaintiff,

                                                AMENDED COMPLAINT

   -against-


Sentinel Insurance Company, LTD.

                                Defendant

Plaintiff Gardner's Pharmacy, Inc., as and for its amended complaint against defendant Sentinel Insurance Company, LTD., alleges, upon information and belief, as follows:

## THE PARTIES

1. Plaintiff Gardner's Pharmacy, Inc. is a New York corporation formed in 1990. Gardner's Pharmacy, Inc. (hereinafter "Gardner's) has principal offices and operates as a retail store at 371 Broadway, Brooklyn, NY 11211. Gardner's primary business is selling retail prescription drugs.

2. The Defendant Sentinel Insurance Company, LTD., (hereinafter "Sentinel") is a commercial insurance carrier with headquarters at One Hartford Plaza, Hartford, CT 06155 and regional offices at 277 Park Avenue, New York, NY 10172.

## PRELIMINARY STATEMENT

3. This breach of contract and declaratory relief action arises out of Sentinel's refusal to provide coverage under an insurance policy.

4. Gardner's is the named insured under Sentinel's policy number 12 SBA UL3824 (hereinafter "the Policy") beginning December 26th, 2014, which specifically provides coverage for, among other things, "computer fraud", "identity theft" and "forgery".

5. Gardner's is a victim of theft, forgery, identity theft, and computer fraud by Jorge Vergara, Said Abdelkader, and Broadway RX.

6. Sentinel paid $25,000.00 to Gardner's for losses caused by employee theft due under the Policy.

7. Sentinel / Hartford refuses to pay the additional claims submitted for, inter alia, loss of business income, stolen computer data, forgery, and identity theft ("the Claims") due under the Policy.

8. Gardner's submitted the Claims to Sentinel.

9. The Policy is designed to protect against forgery, fraud and theft of computer data.

10. Despite the fact that Gardner's has paid its premiums, Sentinel refuses to pay Gardner's Claims.

11. Gardner's seeks a declaration that there is coverage for Gardner's Claims under the Policy and damages for breach of contract due to Sentinel's unreasonable failure to honor its obligation under the Policy to cover the Claims.

## JURISDICTION

12. This lawsuit is in U.S. District Court because the amount in controversy exceeds $75,000.00 and the parties are domiciled, incorporated, and maintain their principal place of business in different states. 28 U.S.C. § 1332(a)(1).

## FACTUAL ALLEGATION

Gardner's is a Victim or Theft

13. While Vergara was working for Gardner's, he looted over $3,700,000.00 dollars from Gardner's by opening sham bank accounts at Flushing Bank, Everbank, Bank of Internet and TD Bank. The phony bank accounts were opened by forgery and identity theft. This massive criminal scheme helped bankroll Broadway RX.

14. Gardner's lawsuit against Jorge Vergara, Said Abdelkader, and Broadway RX, et al. is active in State Court under index number 609576/2016 in Nassau County.

15. Sentinel reviewed the pleadings and evidence in Gardner's case filed under index number 609576/2016.

16. In addition to conversion by way of sham bank account looting, the lawsuit filed against Said Abelkader, Jorge Vergara, and Broadway RX also alleges that Broadway RX fraudulently linked itself with Gardner's to steal prescriptions. The linking scheme allows Broadway RX to connect with Gardner's as a chain pharmacy to re-fill existing prescriptions so Gardner's prescription income is paid to Broadway RX.

17. That is not disputed by Broadway RX and Vergara.

18. This linking scheme occurred for approximately twenty months.

19. The prescriptions and customer information is data that belongs to Gardner's.

20. The data theft has not occurred for new customers, or customer data that was entered post Vergara employment. Sentinel is aware of that.

21. Given that fact, logic dictates that if Vergara worked at Gardner's for so long and was the face of the business, Gardner's data was copied and / or exported to Broadway RX. So Broadway RX would have the customer addresses, their prescription information, doctor identification information, etc.

22. Afterwards, Broadway RX somehow (fraudulently) established itself as a chain to Gardner's to complete the theft.

23. It is unlikely that Broadway RX is intercepting the prescriptions through pure cyber means if Gardner's new prescriptions are not touched by Broadway RX.

24. Broadway RX accessed Gardner's customer data which allowed Broadway RX to loot Gardner's prescription business.

25. Gardner's data was lost to Broadway RX, by transporting Gardner's customer information on disk, email, physical wires from Gardner's to his new pharmacy Broadway RX, remote access, program virus, or such other fraudulent means accessing Gardner's network, unauthorized use account, or a combination of the foregoing.

26. Given the close proximity of Gardner's and Broadway RX, it is possible that the theft of prescription business is the result of physical wires connecting the two pharmacies.

27. Another possibility is that the theft could be facilitated by a virus or program base on Gardner's network, to link the pharmacies as "chain pharmacies".

28. In either scenario, a theft has occurred of Gardner's data.

29. While the exact manner of the theft is unknown at this time, it is fact that Broadway RX acted to steal Gardner's prescription data so that income is diverted to Broadway RX's account instead of Gardner's.

30. That was witnessed in real time by Charles Robleson, Sentinel's investigator.

31. The acts of Broadway RX constitutes theft of the Plaintiff's computer software and data.

32. The Policy owned by Gardner's covers this type of loss.

The Sentinel Investigation

33. Hartford / Sentinel was notified of the computer fraud and sent investigator Charles Robleson to the insured premises to investigate.

34. Charles Robleson visited Gardner's on January 5th, 2017 and took a statement from Gloria Adorno.

35. Coincidentally, on the 5th of January Charles Robleson personally witnessed the theft committed in real-time that resulted in Broadway RX re-filling a customer prescription in Gardner's database.

36. Due to the complexity of this computer fraud, Sentinel sent this claim to an outside forensics team Envista Forensics.

37. Envista Forensics conducted several phone interviews with Gloria Adorno.

38. In our last call, Envista was in the process of scheduling a visit to Gardner's for inspection of Gardner's computers.

39. That visit never happened because Sentinel was unwilling to pay the fees (approximately $15,000.00) to Envista Forensics.

40. My conversation with James Richard of Hartford / Sentinel on March 22nd, 2017 stated he would not proceed with the forensics onsite testing.

41. Later that day on the 22nd, Gardner's offered to accommodate Hartford / Sentinel by hiring independent IT investigation to determine the cause of the computer theft. James Richard of Hartford / Sentinel declined to answer that email.

42. Sentinel finally hired a different forensics IT technician for an onsite inspection.

43. Jon Pullin of Loss Solutions Group visited Gardner's on April 7th, 2017.

44. Jon Pullin wrote a report of his findings attached as <u>Exhibit A.</u>

45. In sum, Jon Pullin was unable to determine the exact of cause of loss. Mr. Pullin concluded that the method of theft is unknown and a more thorough forensic investigation of Gardner's network and computer system is required to determine the exact cause of the theft. <u>Exhibit A.</u>

46. Hartford / Sentinel has not scheduled additional forensics testing.

47. Sentinel concluded they "cannot determine that a theft of data as defined by the policy has occurred due to a covered cause of loss. If there is no covered event then business interruption does not trigger under the Policy....Unfortunately, your policy will provide coverage from lost data or software only if it was a result of direct physical loss...Since no covered loss can be determined by either theft, virus, or computer fraud, coverage will not trigger..." Exhibit A.

48. That conclusion is obviously erroneous because Gardner's is a victim of theft.

49. There is a pending criminal indictment against Gardner's former employee.

50. Sentinel cannot counteract that fact.

51. Further, Sentinel concludes that "we cannot determine that the alleged theft of data actually belonged to our insured at the time of the loss as it was somehow diverted before entering our insured's computer system". Exhibit A.

52. That is also obviously false.

53. If that customer data and their prescriptions do not "belong" Gardner's, whom does the prescription data belong to?

54. The customer prescriptions do belong to the insured. Gardner's has operated as a pharmacy storefront for over thirty years. The customer relationships and ongoing prescription business Gardner's property from years of operating as a pharmacy.

The Stolen Computer Data is the Plaintiff's Property

55. The re-fill prescriptions in Gardner's computers belong to Gardner's. The customer base is property of Gardner's. The income from that customer base is property of Gardner's. While the original prescription is being paid, it is property of Gardner's. At the moment a prescription is scheduled to be re-filled that is also property of Gardner's.

56. Vergara and Abdelkader organized a brazen criminal scheme to loot Gardner's of over $3,700,000.00 of operating income with four phony bank accounts. Some of that money bankrolled Broadway RX.

57. To further that criminal scheme, Broadway RX accessed and stole Gardner's patient list data stored within Gardner's computers so prescription income is sent Broadway RX.

58. Sentinel cannot say that data belongs to a neighboring pharmacy that was opened on the yield of a criminal scheme.

59. Like the phony bank accounts, the entire point of Broadway RX, Abdelkader, and Vergara's fraud is to loot Gardner's property.

60. Sentinel's statement that the data did not "belong" to the insured defies logic.

61. Not only is Sentinel's conclusion illogical, it demonstrates a bad faith, gross disregard for Gardner's horrific circumstance.

62. Sentinel made no further attempt determine the cause of this theft as recommended in the report of Loss Solutions Group.

63. Sentinel has not given the insured a reason why they did not make more attempts to determine the cause of theft for coverage.

64. Sentinel unreasonably refused to further investigate the cause of the computer theft.

65. Sentinel reviewed the motions and exhibits in its lawsuit filed against Broadway RX.

66. Given their knowledge that their insured is a victim of massive criminal acts, they have made a bad faith decision to breach the Policy.

Sentinel's Denial of Computer Fraud Coverage

67. Under the Computers & Media portion of the Policy, Sentinel is required to pay for direct physical loss of computer data. Direct physical loss includes theft, defined under the Policy as the "act of stealing or attempt to steal."

> **3. Extended Causes of Loss**
>
> Direct physical loss or physical damage to "computer equipment", "data" or "software" is extended to include the following:
>
> d. Theft of "computer equipment" away from the "scheduled premises". Theft means an act of stealing or an attempt to steal. Theft includes loss of property from a known place when it is likely that the property has been stolen.

68. Gardner's is a victim of theft of over $3,700,000.00 from Gardner's operating income.

69. That there was a covered cause of loss and a suspension of operations of Gardner's Pharmacy to the extent of past (existing) customer prescriptions.

70. Gardner's was unable to re-fill existing customer prescriptions due to the theft. The inability of Gardner's to re-fill existing customer prescriptions is "suspension of operations".

71. Gardner's was not entirely suspended from operating because it was able to re-fill its new customer prescriptions.

72. Just because Gardner's was not entirely suspended from doing business does not negate there was true 'suspension of operations' of a substantial portion of its business.

73. Gardner's inability to re-fill existing customers' prescriptions due to the covered loss constitutes a necessary suspension of operations. Gardner's business was partly frozen; unable to re-fill certain prescriptions taken by Vergara.

74. Thus, there is coverage for loss of business income because there was an actual loss of business income resulting from the necessary suspension of operations caused by a covered cause of loss: theft of data.

75. Gardner's customer data was stolen by Broadway RX.

76. Sentinel cannot dispute that.

77. Gardner's business was partly (and substantially) suspended by Broadway RX.

78. Sentinel cannot dispute that.

79. Logic dictates that Broadway RX (through Vergara and Abdelkader) likely copied the data by disk or email to the Broadway RX network to see and complete the re-fill looting scheme.

80. Before, during, and after the re-fill theft occurs, Broadway RX, through its owners Vergara and Abdelkader, took action to steal from Gardner's so the payments are deposited into Broadway RX's account instead of Gardner's.

81. If this Court determines that a covered theft occurred of the Plaintiff's data, than Sentinel is required to pay for Additional Coverages including Business Income, Extra Expense, Civil Authority, and Extended Business Income losses.

82. That the actions of Broadway RX and Vergara caused (and continues to cause) disruption in the computer operations of Gardner's.

Sentinel's Denial of Forgery

83. Sentinel failed to pay Gardner's forgery claim.

84. The Policy reads:

**f. Forgery**

(1) We will pay for loss resulting directly from forgery or alteration of any check, draft, promissory note, or similar written promises, orders or directions to pay a sum certain in "money" that you or your at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee having use and custody of the property, at the "scheduled premises", or in transit between any of these places, resulting directly from:

(a) "Theft";
(b) Disappearance; or
(c) Destruction.

85. The checks annexed as <u>Exhibit B</u> were blatantly forged by Vergara as a result of his theft.

86. The checks were emailed to Sentinel / Hartford.

87. Despite repeated attempts to claim coverage of $25k for the forged checks, Sentinel has ignored this claim.

88. Sentinel's refusal to address this claim is further proof of its bad-faith and gross disregard of the Plaintiff's rights under the Policy.

<u>Sentinel's Denial of Identity Theft Coverage</u>

89. Gardner's is covered for identity theft.

90. Sentinel was provided copies of the pleadings in this lawsuit which include the application that stole Gardner's identity to open phony bank accounts at Flushing and TD Bank.

91. Despite repeated attempts to claim coverage for identity theft, Sentinel has ignored this claim.

92. Those allegations were not denied by Vergara.

## FIRST CAUSE OF ACTION
### (breach of contract)

93. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs "1" through "92" with the same force and effect.

94. The Policy is a valid and enforceable contract.

95. Gardner's paid all premiums, provided prompt notice of the claims, and otherwise performed all obligations under the Policy.

96. Other than the $25,000.00 employee theft claim, Sentinel has not paid any amounts to Gardner's. By failing to provide coverage for the Claims, Sentinel has breached the terms of the Policy.

97. Gardner's is entitled to, inter alia, the following coverages under the Policy:

- Up to $1MM for loss of Business Income, Extra Expense, Civil Authority, and Extended Business Income losses.
- Identity theft
- Forgery Exhibit B.
- Legal fees
- Claim Expenses
- Coverage to rectify / replace the losses sustained due to the Computer Fraud and actual loss of business income sustained due to the period of restoration
- $500,000.00 of business income and extra expense

98. As a direct and proximate result of Sentinel's breach of the Policy, Gardner's has suffered damages in an amount to be determined at trial, plus consequential damages, attorneys' fees, and pre-judgment interest to the extent permitted by law.

99. Gardner's reserves its right to amend its claims for coverage due under the Policy.

## SECOND CAUSE OF ACTION
### (Declaratory relief)

100. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in paragraphs "1" through "99" with the same force and effect.

101. Pursuant to the Policy, Sentinel is required to pay the following:

- Up to $1,000,000.00 for loss of Business Income, Extra Expense, Civil Authority, and Extended Business Income losses which resulted in theft of "data" and "software":
- Costs to cover costs to research, replace or restore "data" or "software"
- identity theft
- $25,000.00 for the forged checks written by Jorge Vergara from the phony Flushing Bank account after his termination from Gardner's Pharmacy
- blanked coverage for direct physical loss of or physical damage to Gardner's computers
- $500,000.00 of business income and extra expense
- Costs to recover lost records and restore data
- Attorneys' fees

- Consequential damages

102. Gardner's is entitled to consequential damages.

103. An insured may recover foreseeable consequential damages, beyond the limits of the policy, where the insurer breaches its duty to investigate and settle claims in good faith. <u>Bi-Economy Mkt., Inc. v Harleysville Ins. Co. of N.Y; STV Group v American Cont. Props., 234 AD2d 50 [1996])</u>.

104. Even after the recommendation of Loss Solutions Group, Sentinel has not thoroughly investigated this issue to make a final determination.

105. The Report does not conclude, with certainty, the cause of the theft. Without fully knowing the cause of theft of computer data, Hartford cannot make a fair evaluation to determine coverage.

106. The first forensics team Envista was not sent to the premises to inspect the computer equipment because the forensics fee of $15,000.00 was "too high".

107. Jon Pullin's report concludes that a more thorough analysis should be conducted to determine the exact manner of theft which Sentinel has not done.

108. It is the obligation of the insurer to thoroughly investigate the facts and circumstances of a claim.

109. Sentinel fails to follow through on the recommendation of Global Loss Solutions to further investigate.

110. Why didn't Sentinel follow through on the recommendation of Global Loss Solution? The insured is entitled to an answer. Sentinel has not provided a reason why they did not follow through on the recommendation of Global Loss Solutions to further investigate in the insureds' best interest.

111. That if Sentinel does not provide an acceptable reason to this Court, than Gardner's is entitled to consequential damages.

112. Sentinel's argument that a theft is 'alleged' is absurd. Sentinel reviewed the pleadings and evidence in Gardner's case filed against Broadway RX bearing index number 609576/2016. Also, there is now a criminal indictment which Sentinel has also reviewed. It is even more absurd that Sentinel claims the data stolen does not "belong" to the insured. Such a statement defies logic.

113. Sentinel's poor conduct and mischaracterization of the facts shows its indifference to the insured.

114. Sentinel's unwillingness to investigate for its insured continues on its pattern of disregard for the insured's interest. That is why this lawsuit was filed and the Court is required to determine coverages. Gardner's is entitled to consequential damages because Sentinel / Hartford breached its duty to investigate. Sentinel has not acted in good faith to thoroughly test the insured's hardware to determine the exact source of the theft.

115. Sentinel has not acted in good faith by ignoring the identity theft and forgery Claims.

116. The checks annexed as <u>Exhibit B</u> is forgery by a non-employee. The checks are utterly ignored by Sentinel / Hartford and further demonstrates Sentinel's conscious or knowing indifference to the insured's interests. <u>Bennion v Allstate Ins. Co., 284 AD2d 924 [2001]).</u>

117. Thus, Gardner's is entitled to special damages.

118. Sentinel and its internal and outside counsel have reviewed the facts of this case, the pending civil and criminal indictment. That if there are additional coverages available to the insured, than Gardner's reserves its right to amend and add to the relief sought in this amended complaint.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

(a) on the First Cause of Action, based on Sentinel's breach of the Policy, for damages in an amount to be determined at trial, plus consequential damages, attorneys' fees, and pre-judgment interest to the extent permitted by law;

(b) On the Second Cause of Action, declaring the Claims as coverable under the Policy and directing Sentinel to pay all coverable losses as provided in the Policy;

(c) Additionally, Plaintiff requests such other and further relief as the Court deems just and proper

VERIFICATION: The undersigned, affirms under penalties of perjury, that he is a member of the firm appearing as attorney of record for the Plaintiff, has read this complaint and knows its contents, and that the same is alleged upon information and belief and believes it to be true. Affirmant states that the grounds of his belief is correspondence furnished to him by the Plaintiff and interviews with officers of the Plaintiff. This verification is made by Affirmant because Plaintiff's place of business is located outside the County where Affirmant maintains his law practice and the plaintiff has authorized me to make said Verification on its behalf. This verification is affirmed on September 10, 2017.

DATED: New York, New York
        September 10, 2017

                                        */s/ John Manfredi*
                                        John Manfredi, Esq.
                                        Manfredi Law Group, PLLC
                                        ATTORNEY FOR
                                        PLAINTIFF GARDNER'S PHARMACY INC.
                                        302 East 19th St. Suite 2A
                                        New York, New York 10003
                                        ph: (347) 614 7006